## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ELIZABETH A. LEMON,       )
                              )
        Plaintiff,       )
                              )
       v.          )     Civil Action No. 23-741-SRF
                              )
LELAND DUDEK,[1]      )
Acting Commissioner of Social Security,  )
                              )
        Defendant.     )

---

Angela Pinto Ross, Doroshow, Pasquale, Krawitz, & Bhaya, Wilmington, DE.

     Attorney for Plaintiff.

David C. Weiss, United States Attorney, District of Delaware; Shawn C. Carver, Special Assistant United States Attorney, Office of Program Litigation, Social Security Administration, Baltimore, MD; Brian C. O'Donnell, Associate General Counsel, Social Security Administration, Baltimore, MD.

     Attorneys for Defendant.

---

## MEMORANDUM OPINION[2]

September 18, 2025
Wilmington, Delaware

---

[1] Leland Dudek is now the Acting Commissioner of Social Security and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] In April of 2024, the parties consented to the jurisdiction of the magistrate judge to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.  (D.I. 19)



**FALLON, U.S. MAGISTRATE JUDGE:**

Plaintiff Elizabeth A. Lemon ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) against defendant Leland Dudek, the Acting Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[3]  (D.I. 2)  Presently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.  (D.I. 13; D.I. 15)[4]  For the following reasons, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff protectively filed an application for supplemental security income ("SSI") on December 4, 2019, alleging disability starting on January 1, 2016 due to a torn meniscus, diabetes, bipolar disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), depression, and anxiety.  (D.I. 8 at 258-61)  Her claim was denied initially in October of 2020 and on reconsideration in March of 2021.  (*Id.* at 258-61, 280-81)  At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on November 23, 2021. (*Id.* at 180-223, 283)  Shortly before the hearing, Plaintiff amended her alleged onset date of disability ("AOD") to her filing date of December 4, 2019.  (*Id.* at 401)

---

[3] Plaintiff also applied for disability insurance benefits ("DIB") but voluntarily withdrew the request prior to her hearing because she was last insured for DIB on September 30, 2016, prior to the amended onset date of December 4, 2019.  (D.I. 8 at 24-25, 185-86, 401)
[4] The briefing on the pending motions is found at D.I. 14, D.I. 16, and D.I. 18.

The ALJ issued an unfavorable decision on January 6, 2022, finding that Plaintiff could perform a range of medium work with additional restrictions as described in Section I.D, *infra*.[5] (*Id.* at 24-34) The Appeals Council denied Plaintiff's request for review on May 11, 2023, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 7-11) Plaintiff brought this civil action on July 7, 2023. (D.I. 2)

**B. Medical Evidence**

The ALJ determined that Plaintiff suffers from the following severe impairments: diverticulitis/colitis, diabetes mellitus, obesity, degenerative disc disease with radiculopathy, bipolar disorder, ADHD, generalized anxiety disorder, PTSD, depression, and borderline personality disorder. (D.I. 8 at 27) The court focuses its summary of the medical evidence on the records relevant to Plaintiff's mental impairments, which are the subject of Plaintiff's appeal.

**1. Treatment records**

Plaintiff was voluntarily admitted to the hospital for a psychiatric evaluation in July of 2019, prior to her AOD. (D.I. 8-1 at 104-10) Treatment notes disclosed Plaintiff's long history of mood instability and her diagnoses of bipolar disorder, generalized anxiety disorder, and ADHD. (*Id.* at 107) At the time of her hospitalization, Plaintiff was not receiving outpatient psychiatric care and had not taken psychotropic medications for two months. (*Id.* at 107, 110) She was tearful, anxious, depressed, and unkempt, and she exhibited poor eye contact during her mental status examination. (*Id.* at 108) Although her memory was intact, her attention span,

---

[5] Specifically, the ALJ determined that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; remember, understand and carry out simple instructions, but not at a production pace; have few changes in a routine work setting; make simple work-related decisions; tolerate occasional interaction with supervisors and coworkers; and rarely interact with the public." (D.I. 8 at 29)

insight, and judgment were poor. (*Id.*) Subsequent treatment notes indicate that Plaintiff left the hospital after three days because she did not find the hospitalization helpful. (*Id.* at 365)

Plaintiff regularly attended therapy at Mid-Atlantic Behavioral Health during the relevant period, consistently reporting symptoms of anxiety and depression and difficulties with activities of daily living, and occasionally indicating passive suicidal ideation. However, the objective results of Plaintiff's mental status examinations were not always consistent with her self-reported symptoms, and Plaintiff's providers described limited fluctuations in Plaintiff's symptoms throughout the relevant period. Sometimes, Plaintiff's providers described her mood as anxious and depressed and/or her appearance as disheveled, noting that she exhibited fair to poor judgment, tangential thought processes, and an impaired attention span. (D.I. 8-1 at 390-91, 395-96, 400-01, 405-06, 422-23, 427, 438-39, 443, 452-55, 593-94, 602-03, 610-11, 614-15, 640) On other occasions, the objective findings from Plaintiff's mental status examinations were within normal limits regarding her mood, affect, judgment, insight, memory, and thought processes. (*Id.* at 382, 385, 408, 411-12, 414, 417, 446-49) Even on occasions when Plaintiff's mood was anxious and depressed and she appeared disheveled, objective findings regarding her judgment, memory, and/or thought processes were often within normal limits. (*See, e.g., id.* at 627, 632-33, 637, 640, 644, 647, 649-50; D.I. 8-2 at 152-53, 155-56, 158-59, 161-63, 168-70)

In April of 2020, Plaintiff began treating with Kristin David, PMHNP, who referred Plaintiff for treatment with transcranial magnetic stimulation ("TMS"). (D.I. 8-1 at 418) Plaintiff did not begin TMS therapy until July of 2020, shortly after a visit to the emergency room for shortness of breath believed to be caused by her anxiety. (*Id.* at 457-62) Plaintiff continued to undergo TMS therapy until September of 2020. (*Id.* at 678-82) On August 12, 2020, Plaintiff reported that TMS therapy saved her life by significantly improving her

4

depression. (*Id.* at 596) Months after her TMS therapy concluded, however, Plaintiff complained that the TMS therapy only treated her depression and described the treatment as somewhat effective. (*Id.* at 635; D.I. 8-2 at 162)

On December 16, 2020, Dr. Katie Pierce, Psy.D. and Cheryl McCool, M.S., performed a comprehensive psychological evaluation of Plaintiff. (D.I. 8-1 at 652-74) Plaintiff appeared well-groomed, alert, and oriented, but she was anxious, fidgety, and tearful during the testing session. (*Id.* at 655) Many of Plaintiff's test results were subject to significant validity concerns, with scores that suggested a high degree of noncredible over-reporting. (*Id.* at 660-61)

Under the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"), measures of Plaintiff's ability to sustain attention, concentrate, and exert mental control fell within the extremely low range. (D.I. 8-1 at 656, 661) However, her ability to process simple or routine visual material without making errors fell within the average range. (*Id.* at 661) The test administrator noted that "[t]here was unusual variability between indices that require focus and concentration" and suggested "it is possible that [Plaintiff] did not put forth her best effort," resulting in scores that do not reflect her true cognitive ability. (*Id.*) Other findings from Plaintiff's psychological examination showed no significant deficits in adaptive functioning and some indications of inattentiveness. (D.I. 8-1 at 661)

## 2. Opinion evidence

In October of 2019, Plaintiff's therapist Lisa Darby completed a Mental Impairment Questionnaire which described Plaintiff's response to medication management and biweekly therapy sessions as "poor to fair." (D.I. 8-1 at 237-45) Describing Plaintiff's self-reported symptoms, Darby indicated that Plaintiff is mostly unable to meet competitive standards or has no useful ability to function in the abilities and aptitudes needed to perform skilled, semi-skilled,

or unskilled work. (*Id.* at 239-40) Darby also represented that Plaintiff had extreme limitations in her ability to understand, remember, or apply information and adapt or manage herself, and marked limitations in her ability to interact with others and concentrate, persist, or maintain pace. (*Id.* at 241) Darby anticipated that Plaintiff's impairments would cause her to be absent from work more than four days per month. (*Id.*)

State agency psychological consultant Dr. Patricia Miripol issued an opinion on September 8, 2020 after reviewing Plaintiff's medical records. (D.I. 8 at 225-30) The consultant opined that Plaintiff had mild limitations in her ability to understand, remember, or apply information and adapt or manage herself, and moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace. (*Id.* at 227) The consultant further indicated that Plaintiff can carry out simple, routine tasks, follow a basic work routine, make simple work decisions, and maintain regular attendance. (*Id.* at 229) Although the consultant acknowledged that Plaintiff struggles with mood and motivational issues, she cited relatively normal objective medical findings and described how Plaintiff can shop in stores, drive, maintain friendships, handle money, and complete household tasks. (*Id.* at 230) State agency consultant Dr. Jane Curran affirmed Dr. Miripol's opinion on reconsideration in March of 2021, concluding that Plaintiff's mental status and functioning was stable, and she retained the capacity to meet the mental demands of simple, routine work. (*Id.* at 249-50)

In August of 2021, nurse practitioner Kristin David submitted a letter confirming that Plaintiff was under her psychiatric care and was diagnosed with major depressive disorder, generalized anxiety disorder, PTSD, and ADHD. (D.I. 8-1 at 676) David indicated that Plaintiff "has been unable to work due to her psychiatric conditions and subsequent severe symptoms at times." (*Id.*)

In November of 2021, Elizabeth Browne, LPCMH completed a Mental Impairment Questionnaire regarding Plaintiff's condition and symptoms. (D.I. 8-2 at 192-97) Browne described Plaintiff as having a "partial response" to medication management and therapy interventions and indicated Plaintiff's prognosis was "guarded." (*Id.* at 192) According to Browne, Plaintiff was either unable to meet competitive standards or had no useful ability to function in the abilities and aptitudes needed to perform skilled, semi-skilled, or unskilled work. (*Id.* at 194-95) Browne further represented that Plaintiff had marked limitations in her ability to understand, remember, or apply information and interact with others, and extreme limitations in her ability to concentrate, persist, or maintain pace and adapt or manage herself. (*Id.* at 196) Browne anticipated that Plaintiff's impairments would cause her to be absent from work more than four days per month. (*Id.*)

### C. Hearing Before the ALJ

### 1. Plaintiff's testimony

At the hearing before the ALJ on November 23, 2021, Plaintiff testified that she worked sporadically as a house cleaner during the relevant time period. (D.I. 8 at 187-89) Previously, Plaintiff worked as a security guard, which involved monitoring video screens. (*Id.* at 189) Plaintiff testified that she spends much of her time in the third-floor bedroom of her house because she has difficulty with the stairs. (*Id.* at 191) Plaintiff is able to drive herself to the pharmacy and her medical appointments. (*Id.* at 192-93)

Plaintiff indicated that the symptoms of her depression and anxiety include panic attacks, difficulty breathing, fluctuating moods, feelings of frustration, and frequent thoughts of hurting herself. (D.I. 8 at 196-97) She has difficulty staying organized, following through on tasks, maintaining relationships, and adapting to change. (*Id.* at 197-200) As a result, it is challenging

7

for Plaintiff to maintain her bedroom, do her laundry, and manage her personal care. (*Id.* at 206-07) She estimated that she has about eight good days each month. (*Id.* at 206)

### 2. Vocational expert's testimony

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> For the first hypothetical please assume an individual who is able to perform medium work, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch, crawl, remember, understands and carry out simple instructions but who cannot work at a production pace such as assembly line work, please assume an individual who is able to tolerate few changes in a routine work setting and make simple work related decisions, who is able to occasionally interact with supervisors and coworkers and rarely interact with the public, would such an individual be able to perform the claimant's past work?

(*Id.* at 214) The VE testified that such a claimant would be able to perform her past job as a cleaner but not as a surveillance system monitor. (*Id.* at 214-15) The VE also identified other occupations in the national economy the claimant could perform: linen clerk and box bender at a medium exertional level, and assembler of paper goods at a light exertional level. (*Id.* at 216)

The ALJ then asked if the VE's analysis would be impacted if the hypothetical individual could perform only light work with all the previously listed limitations. (*Id.* at 215) The VE confirmed that the claimant could perform her past work as a cleaner. (*Id.*) According to the VE, the claimant could not return to her past work as a surveillance system monitor even at a sedentary level due to her mental limitations, which would prevent her from interacting with the public. (*Id.*)

The VE testified that Plaintiff would be precluded from all work if she was off task for at least twenty percent of the workday, if she had four absences per month, or if she needed to take additional breaks on top of regularly scheduled breaks. (*Id.* at 217-19) The VE also opined that an individual who was unwilling to take instructions or feedback from a supervisor or who

needed reminders to perform their tasks would not be able to engage in competitive employment.

(*Id.* at 218-19)

### D. The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the December 4, 2019 onset date through the date of the ALJ's decision. (D.I. 8 at 34) The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since December 4, 2019, the application date (20 CFR 416.971 *et seq.*).

3. The claimant has the following severe impairments: diverticulitis/colitis; diabetes mellitus; obesity; degenerative disc disease with radiculopathy; bipolar disorder; ADHD; generalized anxiety disorder; PTSD; depression; and borderline personality disorder (20 CFR 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5. [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; remember, understand and carry out simple instructions, but not at a production pace; have few changes in a routine work setting; make simple work-related decisions; tolerate occasional interaction with supervisors and coworkers; and rarely interact with the public.

6. The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from the amended alleged onset date of December 4, 2019, through the date of this decision (20 CFR 416.920(f)).

(*Id.* at 27-34)

## II.    STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial

evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 587

U.S. 97, 99 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable

mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839

F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 587 U.S. at 103). When applying the

substantial evidence standard, the court "looks to an existing administrative record and asks

whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."

*Biestek*, 587 U.S. at 102 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

threshold for satisfying the substantial evidence standard is "not high[,]" requiring "'more than a

mere scintilla'" of evidence. *Id.* at 103. Additionally, when reviewing the record for substantial

evidence, "we are mindful that we must not substitute our own judgment for that of the fact

finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

## III.    DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to

indigent persons under the SSI program. 42 U.S.C. § 1382(a). A disability is defined for

purposes of SSI as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe

that they preclude a return to previous work or engagement in any other kind of substantial

gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540

U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is

disabled. *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If

the Commissioner makes a finding of disability or non-disability at any point in the sequential

process, the Commissioner will not review the claim further. 20 C.F.R. § 416.920(a)(4)(i). At

step one, the Commissioner determines whether the claimant is engaged in any substantial

gainful activity. *See id.* If the claimant is not engaged in substantial gainful activity, step two

requires the Commissioner to determine whether the claimant is suffering from a severe

impairment or a severe combination of impairments. *See id.* at § 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the

claimant's impairments to a list of impairments that are presumed severe enough to preclude any

gainful work. *See id.* at § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's

impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See*

20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails

to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §

416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional

capacity ("RFC") to perform past relevant work. *See id.* at § 416.920(a)(4)(iv); *Plummer*, 186

F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak*,

777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations

omitted). The claimant bears the burden of demonstrating the inability to return to past relevant

work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff makes two arguments in support of her challenge to the ALJ's determination. First, Plaintiff contends that the ALJ failed to consider relevant medical evidence regarding Plaintiff's mental impairments. (D.I. 14 at 13-17) Next, Plaintiff alleges that the ALJ erred by failing to articulate her reasons for discounting the opinions of Plaintiff's treating medical providers. (*Id.* at 17-19)

#### 1. The ALJ acknowledged and evaluated the relevant medical evidence.

Plaintiff contends that the ALJ failed to acknowledge and evaluate all relevant medical evidence related to Plaintiff's mental health, instead focusing only on certain symptoms and claiming no overall worsening of symptoms. (D.I. 14 at 13-14) The Commissioner responds that the ALJ carefully considered the entire record and properly concluded that Plaintiff's statements about the limiting effects of her symptoms were not entirely consistent with the medical evidence. (D.I. 16 at 7-8)

A review of the ALJ's decision does not support Plaintiff's position that the ALJ ignored relevant medical evidence pertaining to Plaintiff's mental impairments. The chart below sets forth the medical evidence and symptoms that were allegedly ignored by the ALJ, juxtaposed with citations to the ALJ's decision where medical evidence regarding these symptoms was considered:

| RELEVANT SYMPTOMS | ALJ'S DECISION |
|---|---|
| Tangential associations, content of thought, poor to fair insight in social situations, and fair judgment in activities of daily living. (D.I. 14 at 14) | The ALJ considered the treatment notes of Jocelyn Sagrati, LCSW, from July 10, July 24, and August 7, 2020, who described Plaintiff's judgment concerning everyday activities and social situations as fair. (D.I. 8 at 28-32 (citing 11F at 12, 20, 24); D.I. 8-1 at 603, 610, 615)<br><br>The ALJ considered the treatment notes of Lisa Darby, LCSW, from June 11 and August 6, 2020, who described Plaintiff's judgment concerning everyday activities and social situations as fair and identified abnormal tangential associations and tangential content of thoughts. (D.I. 8 at 28-32 (citing 11F at 16, 32); D.I. 8-1 at 607, 623) Treatment notes from Cheryl McCool, MS, from January 6, 2021 also described Plaintiff's thought processes as tangential. (D.I. 8 at 28-32 (citing 11F at 49); D.I. 8-1 at 640)<br><br>The ALJ considered the treatment notes of Elizabeth Browne, LPCMH, from September 21, 2021, who described Plaintiff's insight as poor. (D.I. 8 at 28-32 (citing 17F at 82); D.I. 8-2 at 180) |
| Inability to get out of bed. (D.I. 14 at 14) | The ALJ considered the treatment notes of Lisa Darby, LCSW, from March 10, 2020, who observed that Plaintiff's chief complaint was her "bad days, when I feel like I can't even get out of bed" and observed Plaintiff had made minimal progress in setting her alarm to wake up at 10 o'clock each morning. (D.I. 8 at 28-32 (citing 8F at 65); D.I. 8-1 at 403, 406, 444) |

| | The ALJ also considered Darby's treatment notes from May 14, 2020, when Plaintiff reported she felt a little better and had taken a shower and "put sheets on the bed." (D.I. 8 at 28-32 (citing 8F at 103); D.I. 8-1 at 441, 444) |
|---|---|
| Labile mood / affect. (D.I. 14 at 14) | The ALJ considered the treatment notes of Jennie Lowe, MSW, from February 4 and March 18, 2021, who described Plaintiff's affect as labile. (D.I. 8 at 28-32 (citing 11F at 36; 17F at 54-55); D.I. 8-1 at 627; D.I. 8-2 at 153)<br><br>The ALJ considered the treatment notes of Elizabeth Browne, LPCMH, from September 21, 2021, who described Plaintiff's mood as anxious and labile. (D.I. 8 at 28-32 (citing 17F at 82); D.I. 8-2 at 180) |
| Crying episodes during appointments. (D.I. 14 at 15) | The ALJ considered the treatment notes of Katie Pierce, Psy.D., from January 28, 2021, who described Plaintiff's mood as tearful but described all other findings on mental examination as normal. (D.I. 8 at 28-32 (citing 11F at 38); D.I. 8-1 at 629-30)<br><br>The ALJ also considered the treatment notes of Jennie Lowe, MSW, from February 4 and March 18, 2021, who described Plaintiff as overwhelmed and tearful. (D.I. 8 at 28-32 (citing 11F at 36; 17F at 54-55); D.I. 8-1 at 627; D.I. 8-2 at 152-53)<br><br>Finally, the ALJ considered the treatment notes of Elizabeth Browne, LPCMH, from June 15 and September 21, 2021, who described Plaintiff's affect as tearful. (D.I. 8 at 28-32 (citing 17F at 70, 82); D.I. 8-2 at 168, 180) |
| Passive suicidal ideations. (D.I. 14 at 15) | The ALJ considered the treatment notes of Lisa Darby, LCSW, from June 11 and August 6, 2020, and Jennie Lowe, MSW, from February 4 and March 18, 2021, who indicated that Plaintiff reported some recent thoughts of harm to self or others without plan or intent. (D.I. 8 at 28-32 (citing 11F at 16, 32, 36; 17F at 54-55); D.I. 8-1 at 607, 623, 627; D.I. 8-2 at 152) |

| | |
|---|---|
| Plaintiff being somewhat cooperative upon examination.  (D.I. 14 at 15) | The ALJ considered the treatment notes of Lisa Darby, LCSW, from June 11, 2020, who indicated that Plaintiff was "somewhat cooperative" upon examination.  (D.I. 8 at 28-32 (citing 11F at 32); D.I. 8-1 at 623) |
| Minimal progress in Plaintiff's treatment.  (D.I. 14 at 15) | The ALJ considered the treatment notes of Jocelyn Sagrati, LCSW, from July 24 and August 7, 2020, and Lisa Darby, LCSW, from June 11, 2020, where they described Plaintiff's progress as "minimal."  (D.I. 8 at 28-32 (citing 11F at 12, 20, 32); D.I. 8-1 at 603, 611-12, 624) |
| Disheveled appearance / appearing acutely ill in moderate distress.  (D.I. 14 at 15) | The ALJ considered the treatment notes of Jocelyn Sagrati, LCSW, from July 10, July 24, and August 7, 2020, where she observed that Plaintiff's appearance was disheveled and she "appears acutely ill in moderate distress."  (D.I. 8 at 28-32 (citing 11F at 12, 20, 24); D.I. 8-1 at 601-03, 610, 614)<br><br>The ALJ also considered the treatment notes of Cheryl McCool, MS, from January 6, 2021, and Jennie Lowe, MSW, from February 4, 2021, who described Plaintiff's appearance as disheveled.  (D.I. 8 at 28-32 (citing 11F at 36, 49); D.I. 8-1 at 627, 640) |
| Impaired attention span.  (D.I. 14 at 15) | The ALJ's decision expressly notes that Plaintiff's mental examinations "at times reveal[ed] impaired attention span[.]"  (D.I. 8 at 30)<br><br>The ALJ considered the treatment notes of Cheryl McCool, MS, from January 6, 2021, who described Plaintiff's attention as "fidgety."  (D.I. 8 at 28-32 (citing 11F at 49); D.I. 8-1 at 640)<br><br>The ALJ considered the treatment notes of Kristin David, PMHNP, from May 20, 2021, who described Plaintiff's attention span as "moderately impaired."  (D.I. 8 at 28-32 (citing 17F at 63); D.I. 8-2 at 162)<br><br>The ALJ considered the treatment notes of Elizabeth Browne, LPCMH, from June 15, 2021, who described Plaintiff's attention span |

| | |
|---|---|
| | as "mildly impaired." (D.I. 8 at 28-32 (citing 17F at 70); D.I. 8-2 at 168) |
| Disorganized thought process. (D.I. 14 at 15) | The ALJ considered the treatment notes of Elizabeth Browne, LPCMH, from September 21, 2021, who described Plaintiff's thought process as disorganized and racing. (D.I. 8 at 28-32 (citing 17F at 82); D.I. 8-2 at 180) |

The ALJ is not required to discuss "every tidbit of evidence included in the record" in her decision. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Although the ALJ did not expressly discuss most of the foregoing symptoms in her decision, it is apparent from her decision that she reviewed and considered medical records describing those symptoms. *Cf. Hrycak v. Kijakazi*, C.A. No. 20-472-LPS-SRF, 2021 WL 3617863, at *8–9 (D. Del. Aug. 16, 2021) (concluding that remand was warranted where the ALJ failed to consider any treatment records from one of plaintiff's mental health providers who treated the plaintiff for nearly two years). The treatment records discussed above largely describe these symptoms as mild to moderate, and other treatment records from the same period disclose normal objective findings in these areas. (*See, e.g.*, D.I. 8-1 at 382, 385, 408, 411-12, 414, 417, 446-49) In her decision, the ALJ explained that Plaintiff's depressive symptoms improved with TMS therapy, she consistently maintained mental health treatment and medication management, her treatment records revealed no worsening findings, and Plaintiff's self-reported symptoms raised significant validity concerns. (D.I. 8 at 30)

Plaintiff also contends that the ALJ did not address other evidence supporting a worsening of Plaintiff's impairments and more severe symptoms. (D.I. 14 at 15) In particular, Plaintiff cites the ALJ's failure to discuss her emergency room visit in July of 2020, the fleeting nature of Plaintiff's relief from TMS treatment, and the opinion of Dr. Katie Pierce that Plaintiff

16

requires frequent breaks. (*Id.* at 15-16) But a review of the ALJ's decision confirms that the ALJ adequately considered the nature and severity of Plaintiff's symptoms.

The ALJ did not expressly consider or cite to the records from Plaintiff's visit to the emergency room on July 1, 2020, when Plaintiff sought care for shortness of breath caused by a panic attack. (D.I. 8-1 at 471-72) Notes from the visit indicated that Plaintiff's symptoms completely resolved with anti-anxiety medication, and she reported feeling much better and requested to go home. (*Id.* at 472) Although the ALJ did not discuss this medical record, she acknowledged that Plaintiff's mental status examinations routinely revealed anxious findings. (D.I. 8 at 30) However, the ALJ cited substantial evidence in support of her conclusion that Plaintiff's anxiety did not grow worse, accurately stating that Plaintiff had "no frequent involuntary or voluntary psychiatric hospitalizations . . . during the relevant period." (*Id.*)

Plaintiff's suggestion that the ALJ did not adequately consider the fleeting nature of her relief from TMS treatment is also unpersuasive. The ALJ's decision expressly states that Plaintiff experienced "some relief with [TMS] treatment[.]" (D.I. 8 at 30) The ALJ also considered the treatment notes of Kristin David, PMHNP, from January 14 and May 20, 2021, where she noted that Plaintiff complained her TMS treatment only improved her depression and not her anxiety, and she described TMS as "somewhat effective." (*Id.* at 28-32 (citing 11F at 46, 17F at 63); D.I. 8-1 at 635; D.I. 8-2 at 162)

Finally, Plaintiff's position that the ALJ did not account for Dr. Pierce's opinion regarding her need for frequent breaks is not supported by the record. This recommendation was included in Dr. Pierce's report on Plaintiff's psychological evaluation in December of 2020, a record that was broadly discussed and cited by the ALJ in her opinion. (D.I. 8 at 30; D.I. 8-1 at 660-63, 666-67) In the report, Dr. Pierce stated that, "[d]ue to [Plaintiff's] reported difficulty

with inattention, it is recommended that she break tasks into smaller, more manageable parts. It may also be helpful to include frequent breaks when completing a task, which will allow her to feel refreshed before returning to the task at hand." (D.I. 8-1 at 666) Dr. Pierce reiterated this recommendation in treatment notes from a visit with Plaintiff on January 28, 2021, which were also cited in the ALJ's decision. (*Id.* at 629-30; D.I. 8 at 30)

In both instances, Dr. Pierce's recommendation was based on Plaintiff's reported difficulties with inattention, as opposed to Dr. Pierce's own objective findings during the evaluation. Objective results from the December 2020 psychological evaluation showed no indication of issues related to inattentiveness, leading Dr. Pierce to conclude that "there is insufficient data to suggest that [Plaintiff] meets the diagnostic threshold for a diagnosis of ADHD[.]" (D.I. 8-1 at 661) Likewise, the objective findings included in Plaintiff's treatment notes from January 28, 2021 indicated that Plaintiff exhibited good concentration and described Plaintiff as "attentive." (*Id.* at 629-30) Although the ALJ did not specifically discuss Dr. Pierce's recommendation that Plaintiff should take frequent breaks, she broadly addressed the results of the December 2020 psychological examination and acknowledged concerns that Plaintiff overreported her symptoms. (D.I. 8 at 30) There is substantial evidence in the record to support the ALJ's failure to credit Dr. Pierce's recommendation for frequent breaks because the recommendation was based on Plaintiff's subjective complaints and was inconsistent with the objective medical evidence set forth in the same psychological evaluation. *See Favazza v. Kijakazi*, C.A. No. 21-17-CJB, 2023 WL 3055580, at *14 (D. Del. Apr. 24, 2023).

### 2. The ALJ's evaluation of the medical opinions is supported by substantial evidence.

Plaintiff argues that the ALJ erred by improperly discrediting the medical opinions of two treating providers, Darby and Browne, who assessed Plaintiff's mental impairments. (D.I. 14 at 17-19) In particular, Plaintiff takes issue with the ALJ's lack of specificity in considering the two opinions, addressing them in a single paragraph without evaluating them for consistency and supportability. (*Id.* at 19) Plaintiff contends that the totality of the medical evidence supports a conclusion that Plaintiff would be unable to sustain employment, consistent with her treating providers' opinions. (*Id.*)

Medical opinions and prior administrative medical findings are generally not entitled to deference or any specific evidentiary weight. 20 C.F.R. § 416.920c(a). An ALJ "is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614. In considering medical opinions and prior administrative medical findings, an ALJ must articulate her consideration of the supportability and consistency of those opinions. 20 C.F.R. § 416.920c(a). Consistency refers to an opinion's consistency with evidence from other sources in the record, both medical and nonmedical. 20 C.F.R. § 416.920c(c)(2). Supportability is a measure of the relevancy of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1).

The ALJ addressed the consistency of the opinions rendered by Darby and Browne with Plaintiff's treatment records, concluding that the significant limitations identified in those opinions were "not consistent with the record because despite routinely having depressive and anxious findings upon examinations, the claimant maintains her mental health treatment without worsening symptoms upon examinations." (D.I. 8 at 32) The ALJ also noted that "the

examinations reveal no significant and ongoing memory/cognitive, attention/concentration, or social/behavioral deficits, and the claimant's WAIS-IV testing is only within the low average range[.]" (*Id.*) Plaintiff invites the court to re-weigh the evidence and impermissibly substitute its judgment for the judgment of the ALJ. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citing *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Plaintiff contends that the ALJ failed to consider the opinions of Darby and Browne for their consistency with one another. (D.I. 14 at 19) As Plaintiff herself acknowledges, however, the ALJ considered the opinions of Darby and Browne together in a single paragraph that emphasizes their similarities, and she rejected both opinions based on her consideration of the same objective medical evidence in the record. (D.I. 8 at 32; D.I. 14 at 17)

Plaintiff further alleges that the ALJ did not consider the consistency of Darby and Browne's opinions with those of two other treating mental health providers. (D.I. 14 at 19) But the ALJ explained that the opinion of Kristin David, PMHNP, was assigned no weight because it stated only that Plaintiff was unable to work due to her psychiatric conditions, and a decision regarding whether a claimant can or cannot work is reserved solely for the Commissioner. (D.I. 8 at 32; D.I. 8-1 at 676) Moreover, the opinion of Cynthia Diefenbeck predated the relevant time period and pertained to Plaintiff's ability to serve on jury duty, without an assessment of Plaintiff's specific limitations or symptoms resulting from her mental impairments. (D.I. 8-1 at 103) Plaintiff cites no authority in support of her position that the ALJ was required to evaluate Darby and Browne's opinions for consistency with the conclusory opinions of David and Diefenbeck.

The ALJ also adequately addressed the supportability of Darby and Browne's opinions. The ALJ explained that these opinions were not persuasive because they were "not supported by sufficient explanation with the medical evidence during the relevant period of review[.]" (D.I. 8 at 32) Both opinions are checkbox form reports with no meaningful explanation regarding how they arrived at their conclusions or what evidence supported those conclusions. (D.I. 8-1 at 237-42; D.I. 8-2 at 192-97) Darby's opinion does not cite any medical or clinical findings that support her assessment and instead describes Plaintiff's self-reported symptoms. (D.I. 8-1 at 239-40) Browne's opinion refers to Plaintiff's psychological evaluation from December of 2020 in its entirety with no substantive discussion. (D.I. 8-2 at 195; D.I. 8-1 at 652-67) "When a form submitted by a physician merely includes checked boxes for diagnoses and symptoms without providing additional explanation, this Court has found an ALJ's analysis of the supportability factor sufficient when the ALJ merely noted the absence of supporting explanation." *Larkin v. O'Malley*, C.A. No. 23-275-LDH, 2024 WL 1675678, at *5 (D. Del. Mar. 28, 2024) (citing *Babcock v. Kijakazi*, C.A. No. 21-1110-MPT, 2022 WL 11771359, at *4-5 (D. Del. Oct. 20, 2022)); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (explaining that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, (D.I. 13), and the Commissioner's motion for summary judgment is GRANTED, (D.I. 15).